# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| PAMELA DEAN SMITH | CIVIL ACTION NO. 05-0211A |
| -vs- | |
| LIBERTY LIFE INSURANCE COMPANY | JUDGE LITTLE |

## RULING

Before the court are cross-motions for summary judgment filed by Defendant, Liberty Life Insurance Company ("Liberty") [Doc. #16], and Plaintiff, Pamela Dean Smith ("Smith") [ #17]. For the following reasons, Liberty's motion is DENIED while Smith's motion is GRANTED.

## I. BACKGROUND

### A. Relevant Facts

In March 2003, Pamela Dean Smith and her husband Whitney Blaine Smith (collectively, "the Smiths") secured an insurance policy through Liberty in connection with their mortgage with Saxon Mortgage, Inc. This insurance policy provided that the outstanding balance of the mortgage would be paid upon the accidental death of Whitney or Pamela Smith. On 1 June 2004, the last loan and premium payment received from the Smiths was applied to the payment due on 1 May 2004.[1] Saxon Mortgage sent the Smiths a formal notice of default on 6 July 2004, demanding payment in 90 days. On 30 August 2004, Whitney Blaine Smith died in an auto accident in Grant Parish, Louisiana.

---

[1] This payment did not constitute the final payment due on the loan.

Following her husband's death, Smith filed a claim on the aforementioned insurance policy in September 2004. Liberty denied the claim, citing the non-payment of premiums as the basis for termination of coverage. Smith filed the instant action in Grant Parish, Louisiana. Liberty timely removed the case to this court on 4 February 2005 under 28 U.S.C. § 1441(b), asserting diversity jurisdiction.

### B. Subject Matter Jurisdiction

As federal subject matter jurisdiction is based on diversity of citizenship, Louisiana law governs the merits of this case. 28 U.S.C. § 1332; Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Diversity jurisdiction requires the parties to be citizens of different states and an amount-in-controversy that exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Where these conditions are present, removal is proper. Smith is a citizen of Louisiana. Liberty is a South Carolina Corporation with its principal place of business in South Carolina, and therefore is a citizen of South Carolina. Teal Energy USA, Inc. v. GT, Inc., 369 F.3d 873, 875 (5th Cir. 2004). Whether the jurisdictional amount requirement is met is a closer issue. Although Smith never objected to removal or challenged jurisdiction, a party may neither waive nor consent to subject matter jurisdiction. Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999). Federal courts examine the basis of subject matter jurisdiction *sua sponte*. Id.

Although Liberty's notice of removal states that the amount in controversy exceeds $75,000, the Fifth Circuit has reiterated that removal "cannot be based simply upon conclusory allegations." Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995). On the other hand, "[i]t must

appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). The court examines the circumstances of this case to determine whether the jurisdictional amount has been met.

Louisiana state civil procedure law disallows damage claims for specific amounts. See LA. CODE CIV. PROC. art. 893 ("No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand."); Grant v. Chevron Phillips Chem. Co., 309 F.3d 864, 868 (5th Cir. 2002), cert. denied, 538 U.S. 945 (2003). Because plaintiffs in Louisiana state courts by law may not specify the numerical value of claimed damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Gebbia v. Wal-Mart Stores, Inc. 233 F.3d 880, 882 (5th Cir. 2000) (finding it facially apparent that damages sought in plaintiff's petition for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement exceeded $75,000). "To satisfy the preponderance standard, the removing defendant may support federal jurisdiction either by establishing that it is 'facially apparent' that the claims probably exceed $75,000 or by establishing that the facts in controversy in the removal petition or an accompanying affidavit show that the amount-in-controversy is met." Felton v. Greyhound Lines, Inc., 324 F.3d 771, 773-74 (5th Cir. 2003) (internal citation omitted) (finding subject matter jurisdiction, "although the question remains close," because when plaintiff's medical expenses and rehabilitation costs and damages for pain and suffering were calculated, it was "more likely than not that the amount-in-controversy [would] exceed $75,000").

Applying this analytical framework to the facts of the instant case, the court concludes that it

is facially apparent that the claims probably exceed $75,000. The outstanding mortgage balance at the time of the claim was $63,312.75. Furthermore, Smith's petition seeks compensatory damages for prepayment penalties, mental anguish and humiliation, as well as punitive damages. Pet. Damages ¶¶ 8, 10, 12. Thus, the jurisdictional amount has been met and federal subject matter jurisdiction is proper.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Am. Home Assurance Co. v. United Space Alliance, LLC, 378 F.3d 482, 486 (5th Cir. 2004). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id. at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-moving party must come forward with "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. See SEC v. Recile, 10 F.3d

1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. Id.

The mere fact that both parties argue that there are no genuine issues of material fact does not automatically mean that a trial is unnecessary or that no factual issues exist. See John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985). Cross-motions must be considered separately because each movant bears the burden of establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law. See Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, this court may render summary judgment. Id.

### B. Analysis

The crux of this lawsuit is whether an exception to the notice requirement for cancellation of an insurance policy applies to the type of insurance taken out by the Smiths.[2] Liberty argues that the policy should be categorized as a "health and accident policy," as defined in LA. REV. STAT. ANN. § 22:6(2)(a). Def.'s Mot. Summ. J. at 5-6. In Liberty's estimation, since the policy does not contain a provision for cancelling the policy for a pre-paid period, the notice requirement does not apply. Id. at 6. In particular, Liberty cites an exception to the notice requirement as applicable to the policy in question here:

---

[2] As a preliminary matter, it should be noted that both parties have referred to the certificate of accidental death insurance in the motions currently before the court. Since this document states that it is not the actual insurance contract, we use and refer to the certified copy of the group accidental death policy subsequently submitted by Liberty [#24].

5

> This Section shall not apply to temporary life insurance binders *nor to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid*, nor to the contracts provided in Part XV of this Chapter.

LA. REV. STAT. ANN. § 22:636(E) (emphasis added). Smith argues that the policy is actually a "credit accident policy," as defined in LA. REV. STAT. ANN. § 22:6(16)(a), and that therefore the exception to the notice requirement does not apply.[3] Pl.'s Mot. Summ. J. at 2-3.

In order to ascertain which definition best fits the Smiths' policy, it is necessary to review the statutory language. Neither party provides an in-depth discussion of the relevant statutory history, which reflects several recent changes to the pertinent provisions. The statute governing Liberty's duty under the policy is "the statute that was in effect when the policy was issued." Gahn v. Allstate Life Ins. Co., 926 F.2d 1449, 1455 (5th Cir. 1991).

"Life insurance" is defined as "insurance on human lives and insurances appertaining thereto or connected therewith," including:

> the granting of annuities or survivorship benefits; additional benefits, including the acceleration of life or endowment or annuity benefits in advance of the time they would otherwise be payable, in the event of death by accident; additional benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds.

---

[3] In the petition for damages, Smith asserts that she was "assured that there would not be a problem in receiving the benefits." Pet. Damages ¶ 5. However, Smith does not address this claim in the pleading currently before the court. "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002) (internal quotation marks and citation omitted). An argument must be raised "to such a degree that the district court has an opportunity to rule on it." N.Y. Life Ins. Co. v. Brown, 84 F.3d 137, 141 n.4 (5th Cir. 1996) (quoting FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994)); see also Keelan v. Majesco Software, Inc., 407 F.3d 332, 339-40 (5th Cir. 2005). We deem waived Smith's purported argument that some unidentified Liberty employee told her that her insurance claim would be approved. Thus, we need not address Liberty's arguments regarding oral modification of the insurance contract. See Def.'s Mot. Summ. J. at 6-7.

LA. REV. STAT. ANN. § 22:6(1).[4] "Health and accident" insurance is defined in pertinent part:

> Insurance of human beings against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement, or expense resulting from sickness or old age, or against major expenses incurred by an employee benefit plan due to the illness or injury of a covered employee, or against major expenses incurred by a health care provider at financial risk for provision of health care to persons under an agreement, and every insurance appertaining thereto . . . .

LA. REV. STAT. ANN. § 22:6(2)(a).[5] The Louisiana legislature's 2003 amendments to the definition of "credit insurance" are reflected as follows:

> (16)**(a)** Credit **life, health, and accident** insurance. Insurance generally sold in connection with a credit transaction **and limited to partially or wholly extinguishing the credit obligation**, including but not limited to agreements, contracts, or policies of insurance containing any of the following: credit life, credit health, ~~involuntary unemployment, vendors single interest, vendors dual interest, credit fire,~~ disability, **or** accidental death and dismemberment ~~, or GAP~~. **The credit obligation is the total sum payable, including all loan finance charges and credit service charges, pursuant to the credit transaction.**

LA. H.B. 1485 (May 28, 2003) (emphasis added, additions in bold typeface, deletions in

---

[4] Subsequent to this dispute, this definition has been revised as follows:

Insurance shall be classified as follows:
(1) Life. Insurance on human lives and insurances appertaining thereto or connected therewith. For the purposes of this Code, the transacting of life insurance includes ~~the granting of annuities or survivorship benefits,~~ additional benefits, including the acceleration of life ~~or endowment or annuity~~ benefits in advance of the time they would otherwise be payable, in the event of death by accident; additional benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds.

2005 LA. SESS. LAW SERV. (West) (June 9, 2005).

[5] This section, amended in 2001, had previously read as follows: "Health and accident. Insurance against bodily injury, disablement, or death by accident and against disablement, resulting from sickness and every insurance appertaining thereto."

strikethrough).[6]

> Subsequently in 2004 the Legislature enacted further changes to (16)(a):
>
> Credit life, health, and accident insurance. Insurance generally sold in connection with a credit transaction and limited to partially or wholly extinguishing the credit obligation, including but not limited to agreements, contracts, or policies of insurance containing the following: credit life, credit health, **and** disability**. It also includes** accidental death and dismemberment **insurance sold in connection with a credit transaction that may or may not require benefits payable to wholly or partially extinguish the credit obligation**. The credit obligation is the total sum payable, including all loan finance charges and credit service charges, pursuant to the credit transaction.

LA. H.B. 1499 (June 24, 2004).

In reviewing these definitions, the court finds that the Smiths' policy can be best classified as a credit, health and accident insurance policy, or credit insurance as it was known at the time the policy was issued. The key distinguishing factor is the policy's connection to the Smiths' mortgage, the "credit transaction" contemplated by the statute. Even though Smith focuses on a definition that was not in force at the time that the insurance policy was purchased, we believe that after reviewing the definitions of "life insurance" and "health and accident insurance," "credit, health and accident insurance" best fits the policy in this case. Pl. Mot. Summ. J. at 5-6. As such, the exception to the notice requirement contained in LA. REV. STAT. § 636(E) is inapplicable here. Moreover, the case

---

[6] A "credit life, health, and accident insurance" policy is currently defined as follows:

> Insurance generally sold in connection with a credit transaction and limited to partially or wholly extinguishing the credit obligation, including but not limited to agreements, contracts, or policies of insurance containing the following: credit life, credit health, and disability. It also includes accidental death and dismemberment insurance sold in connection with a credit transaction that may or may not require benefits payable to wholly or partially extinguish the credit obligation. The credit obligation is the total sum payable, including all loan finance charges and credit service charges, pursuant to the credit transaction.

LA. REV. STAT. ANN. § 22:6(16)(a).

cited by Liberty in support of its statutory exception argument is inapposite, as it involved a "health and accident" group insurance policy and the claimant "fully understood that her coverage was about to lapse." See Matthews v. Business Men's Assurance Co. of Am., 478 So.2d 634, 635-36 (La. Ct. App. 1985).

The court is mindful of the fact that the Smiths made no further payments on the insurance policy after 1 June 2004. Thus, nearly three full months passed between the final payment and Mr. Smith's fatal accident. However, Liberty has not argued that it provided any notice of cancellation to the Smiths at any time. Indeed, it has acknowledged that, absent the exception contained in § 636(E), written notification is required in order for an insurer to cancel a policy. Def.'s Mot. Summ. J. at 6. Thus, in the absence of notification of cancellation or a statutory exception, this court finds that the Smiths' policy was valid at the time of the accident in question.

## **CONCLUSION**

For these reasons, the court finds that Liberty has failed to show that a statutory exception to the notice requirement for cancellation of an insurance policy enabled it to deny benefits to Smith. Thus, Liberty's motion is DENIED, and Smith's motion is GRANTED. Smith will prepare an appropriate judgment.

Alexandria, Louisiana
30 September 2005

_____
F. A. LITTLE, JR.

UNITED STATES DISTRICT JUDGE