U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 0 9 2007

ROBERT H. SHE~~~~~
BY ——————
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PAMELA DEAN SMITH | CIVIL ACTION NO. 05-211 |
| VERSUS | JUDGE TRIMBLE |
| LIBERTY LIFE INSURANCE COMPANY | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before this Court is a Motion for Partial Summary Judgment [Doc. # 29] filed by

plaintiff, Pamela Dean Smith in the above captioned matter. For the reasons set forth herein,

plaintiff's instant motion will be DENIED.

### I. Background

#### A. Relevant Facts

Plaintiff is the widow of the late Mr. Whitney Blaine Smith, who perished in a single-

car accident on August 30, 2004. Prior to his death, Mr. Smith and his wife, plaintiff herein,

secured a home mortgage and credit insurance policy[1] which offered payment of any

outstanding home mortgage debt (up to $250,000.00) upon the accidental death of either

spouse. The Smiths failed to pay several mortgage payments and policy premiums on time

and were sent a formal notice of default on July 6, 2004. As above, Mr. Smith's tragic death

occurred the very next month.

---

[1]This Court, speaking through Judge Little, determined that the insurance policy in
question is, indeed, a credit insurance policy under LA. REV. STAT. ANN. § 22:6(16)(a) because of
its "connection to the Smiths' mortgage, the 'credit transaction' contemplated by the statute."
Memorandum Ruling of 9/30/2005 at p. 8, [Doc. # 26].

Following her husband's death, Mrs. Smith filed a claim on the credit insurance policy in September of 2004. Liberty denied the claim, citing non-payment of premiums as the basis for termination of coverage. Plaintiff filed suit in Grant Parish, Louisiana and Liberty timely removed the case to the Western District of Louisiana, Alexandria Division, on February 4, 2005 under 28 U.S.C. § 1441(b), asserting diversity of citizenship.

This Court previously granted a Motion for Partial Summary Judgment [Doc. # 18] filed by plaintiff, thereby holding that the credit insurance policy was still in effect at the time of Mr. Smith's death, as Liberty had not provided the Smiths notice of termination of coverage as required by LA. R.S. 22:636(A). Plaintiff filed the instant Motion for Partial Summary Judgment anticipating averments by Liberty that, although the policy remained in effect at the time of Mr. Smith's death, coverage was excluded based on the section entitled "Risks Not Covered" located on page three (3) of the policy in question[2]. Plaintiffs contend that the exclusionary language cited by Liberty is more properly construed as a coverage exclusion for drug or alcohol related suicide or accidental overdose[3].

## B.    Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004). A dispute about a material

---

[2]Attached as "Exhibit D" to Liberty's Memorandum in Opposition [Doc. # 32].

[3]Plaintiff's Motion for Partial Summary Judgment [Doc. # 29] at pp. 7- 9.

fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(C). "Conclusory denials, improbable references, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. Id.

The mere fact that both parties argue that there are no genuine issues of material fact does not automatically mean that a trial is unnecessary or that no factual issues exist. John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985). Cross-motions must be considered separately because each movant bears the burden of establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law. Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, this court may render summary judgment. Id.

## II. Analysis of Law and Arguments

### A. Interpretation of Insurance Contracts

We are called upon, by the instant motion, to construe the language of a credit insurance policy. This Court's role, in such cases, is to determine the intent of the parties to the contract of insurance, which constitutes the law as between them. LA. CIV. CODE ART. 2045; Succession of Fannaly v. Lafayette Ins. Co., 805 So.2d 1134, 1137 (La. 2002).

A contract of insurance is "an aleatory, nominate contract subject to the general rules of contract interpretation as set forth in our civil code." Id; LA. CIV. CODE ARTS. 1912, 1914-15. When the language of the insurance policy is clear and expresses the intent of the parties without ambiguity, the contract is to be applied exactly as written. LA. CIV. CODE ART. 2046. If ambiguity exists upon application of the general or popular meaning of the language as written, this Court must determine if the ambiguity results in two or more "reasonable" interpretations of the policy at issue. LA. CIV. CODE ARTS. 2048, 2050. When two or more reasonable interpretations of a policy exist, we must construe that policy in favor of coverage and, thus, resolve the issue in favor of the insured. LA. CIV. CODE ART. 2056.

Insurance contracts, like all other contracts governed by Louisiana law, must be interpreted as a whole. LA. CIV. CODE ART. 2050. A provision must be ascribed a meaning and function which does not render other provisions meaningless or without function. Peterson v. Schimek, 98-1712 (La. 03/02/99), 729 So.2d 1024, 1029. Insurers, like all contracting parties, are free to limit their liability or otherwise restrict their obligations under the negotiated contract as long as the resulting contract does not violate statutes or public policy. Respecting these maxims, this Court may not engage in "a perversion of the words or the exercise of inventive powers to create an ambiguity where non exists." Id [quoting

Ledbetter v. Concord General Corp., 95-0809 (La. 1/6/96), 665 So.2d 1166, 1169].

**B.      Application**

The credit insurance policy at issue provides exclusions as follows:

> **"Risks Not Covered** – This Policy does not cover death which
>
> results directly or indirectly, in whole or in part, from: (a) disease,
>
> illness or infirmity of the body or mind; (b) war, declared or
>
> undeclared; or injuries sustained while in the service of any armed
>
> force engaged in conflict with another armed force; (c) intentional self-
>
> inflicted injury while sane, self-inflicted injury while insane; or
>
> participating in or attempting to commit an assault or felony;
>
> (d) travel or flight in or descent from or with any kind of aircraft,
>
> unless the Insured has no duties with respect to such travel,
>
> flight, or descent, and is being transported solely as a passenger
>
> in an aircraft that is not maintained or operated for military or
>
> naval purposes; (e) injury occurring while under the influence
>
> of alcohol; or (f) drugs (including but not limited to narcotics,
>
> hypnotics, and amphetamines), unless administered on the
>
> advice of a physician, or poisons voluntarily taken, administered,
>
> absorbed, inhaled or injected."

Plaintiff contends that the plain meaning of clauses (e) and (f) as shown above merits

summary judgment declaring that these exclusions are inapplicable under the facts of this

case. Specifically, plaintiff urges us to construe clauses (e) and (f) as exclusions for "suicide

resulting from an intentional (or accidental) overdose of prescription medication or self-

inflicted poisoning." [Doc. # 29] at p. 7. Recalling the discussion above of controlling

maxims of contract interpretation, we cannot agree.

Interpreting clauses (e) and (f) in the manner suggested by plaintiff disregards the

content of clause (c), which was clearly intended to address suicide and, additionally, death

attendant to the participation in or commission of certain crimes. We find, instead, that

clauses (e) and (f) clearly and unambiguously concern death while under the influence of

alcohol, drugs, or other poisonous intoxicants not prescribed by a physician. Such meaning

respects the importance of clause (c) concerning suicide and construes clauses (e) and (f) to

exclude death which occurs, unintentionally, while the decedent was intoxicated as outlined

above. It is important to note that death occurring while the decedent was intoxicated by

drugs or other substances prescribed by a physician has been specifically set apart by the

language of this policy. We find that this adequately demonstrates intent to exclude coverage

for death occurring during "recreational" intoxication and not for death occurring while the

decedent was following the treatment plan of his physician.

The findings of Dr. Cameron F. Snider, who performed the autopsy on Mr. Smith, are

probative at this point in our analysis. Dr. Snider's autopsy report contained findings of

acetominophen (83 micrograms/gram), diazepam (0.54 micrograms/gram), and hydrocodone

(1.0 micrograms/gram), as well as a blood alcohol content reading of 0.016.[4] While Dr.

Snider did testify in his deposition about his professional opinion as to whether or not these

levels of drugs and alcohol impaired Mr. Smith in his driving on the day of the accident, the

autopsy report itself lists "acute ethanol and multidrug intoxication" as contributing causes of

Mr. Smith's death. The policy language clearly states that drugs, intoxicants or alcohol not

[4]Report of the Medical Examiner at p. 1, attached as "Exhibit C" to Doc. #32.

prescribed by a physician need not be the sole cause of death in order for the exclusions (e) and (f) to apply. Instead, such causes need only be causes "in part," or, in other words, contributing factors which, when combined with other circumstances, resulted in death. The remaining question, therefore, is whether or not the substances ingested by Mr. Smith prior to his death were, in fact, prescribed by a physician or taken for recreational purposes without prescription. Plaintiff has provided this Court with no summary judgment evidence as to whether or not a physician prescribed these medications. We find that the existence of prescriptions for these medications is a determinative factual issue and without further evidence, we cannot render summary judgment as prayed for by plaintiff.

III.    Conclusion

We find that clauses (e) and (f) are susceptible of only one reasonable interpretation. These clauses are reasonably interpreted as excluding coverage for death caused, in whole or in part, by use of drugs, alcohol, or other intoxicants not prescribed by a physician. We reject plaintiff's argument that such clauses are properly construed as exclusions for suicide, as this eventuality is covered expressly in clause (c) of the same policy. We further find that a determination of whether or not the exclusions of clauses (e) and (f) apply in this case must turn on whether or not the substances found to have been ingested by Mr. Smith prior to death were prescribed by a physician. This issue is a factual one as to which no summary judgment evidence was provided. Accordingly, we find summary judgment on the issue of coverage to be inappropriate at this time.

Alexandria, Louisiana
January _9_ , 2007

JAMES T. TRIMBLE, JR.
U.S. DISTRICT COURT JUDGE